IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WALKER DIGITAL, LLC,

    Plaintiff,

v.                                                                                            Civil Action No. 1:11-cv-558-RGA

AXIS COMMUNICATIONS AB,
AXIS COMMUNICATIONS, INC. and
ON-NET SURVEILLANCE SYSTEMS,
INC.,

    Defendants.

## MEMORANDUM OPINION

Richard D. Kirk, Esq. (argued), Stephen B. Brauerman, Esq., Bayard, P.A., Wilmington, DE; Mark C. Nelson, Esq., Steven M. Geiszler, Esq., SNR Denton US, LLC, Dallas, TX, for Plaintiff.

Philip A. Rovner, Esq., Jonathan A. Choa, Esq., Potter Anderson & Corroon LLP, Wilmington, DE; Ian G. DiBernardo, Esq. (argued), Jeffrey M. Mann, Stroock & Stroock & Lavan LLP, New York, NY, for Defendants.

November 21, 2012

*/s/ Richard G. Andrews*
ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is a Motion to Disqualify Ian DiBernardo and Stroock & Stroock & Lavan, LLP from Representing On-Net Surveillance Systems, Inc. (D.I. 60). The Court held oral argument on November 16, 2012. For the reasons discussed, the motion is denied.

Plaintiff filed a patent lawsuit against the named defendants on June 22, 2011, asserting infringement of four patents. (D.I. 1). Ian DiBernardo, an attorney from the law firm of Stroock & Stroock & Lavan, was admitted *pro hac vice* pursuant to a motion filed October 11, 2011, to represent Defendant On-Net Surveillance Systems, Inc. ("On-Net") (D.I. 15). On a teleconference on March 6, 2012, Plaintiff's then-General Counsel recognized Mr. DiBernardo's name as having served as patent counsel for Walker Digital in the past. (D.I. 62, ¶ 5). After some conferring with On-Net, Plaintiff filed the Motion to Disqualify on June 29, 2012. (D.I. 60).

Mr. DiBernardo went to work for Morgan & Finnegan LLP in August 1995, upon graduating from law school. (D.I. 75, ¶ 3). Mr. DiBernardo was admitted to practice law in New York in October, 1996, and before the United States Patent and Trademark Office in August, 1997. *Id.* ¶ 4. Mr. DiBernardo left Morgan & Finnegan in November 1999, and began working at Stroock & Stroock & Lavan on November 15, 1999. *Id.* ¶ 3. During Mr. DiBernardo's tenure at Morgan & Finnegan, the firm represented Walker Digital, and Mr. DiBernardo prosecuted some Walker Digital patents. Mr. DiBernardo prepared draft patent applications and responses to the USPTO. *Id.* ¶ 7. Mr. DiBernardo did not work on any of the patents in suit, on any patents related to the patents-in-suit, or on any Walker Digital patents directed to video surveillance technology. *Id.* ¶ 8; D.I. 61 at 8.

Mr. DiBernardo's work was overseen and reviewed by more senior attorneys, and those senior attorneys were generally responsible for communicating with Walker Digital. (D.I. 75, ¶ 6). There is no evidence that Mr. DiBernardo was involved in any discussions with Walker Digital regarding patent prosecution strategy or claim drafting strategy; Mr. DiBernardo does not recall any such discussions, and Walker Digital's proffered documents indicate only that Mr. DiBernardo was on emails providing Walker Digital with prosecution materials. *Id.* ¶¶ 6, 12-15.

This Court has recently summarized the relevant legal principles for analysis of the pending motion.

> The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F.Supp.2d 510, 513 (D. Del. 2007) (internal quotation marks and citations omitted); *see also Conley v. Chaffinch*, 431 F.Supp.2d 494, 496 (D. Del. 2006) (same). Because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," however, a court may disqualify an attorney "for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F.Supp. 957, 960 (D. Del. 1992).
>
> Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct ("M.R.P.C."). *See* D. Del. LR 83.6(d)(2). M.R.P.C. Rule 1.9(a) provides:
>
>> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> To establish that a representation violates Rule 1.9, four elements must be shown: "(1) the lawyer must have had an attorney-client relationship with the

former client; (2) the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter; (3) the interests of the second client must be materially adverse to the interests of the former client; and (4) the former client must not have consented to the representation after consultation." *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F.Supp.2d 557, 561 (D. Del. 2009).

To determine whether a current matter is "substantially related" to a matter involved in a former representation, and, thus, whether disqualification under Rule 1.9 is appropriate, the Court must answer the following three questions: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F.Supp. 1281, 1283 (D. Del. 1987) (internal quotation marks and citations omitted); *see also Talecris*, 491 F.Supp.2d at 514.

As the Third Circuit has explained, M.R.P.C. 1.9 exists for the purpose of preventing "even the potential that a former client's confidences and secrets may be used against him," to maintain "public confidence in the integrity of the bar," and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained." *Corn Derivatives*, 748 F.2d at 162. Therefore, in attempting to determine whether a "substantial relationship" exists, "disqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Cardona v. General Motors Corp.*, 942 F.Supp. 968, 973 (D.N.J. 1996) (internal quotation marks and citations omitted). While the party seeking disqualification bears the burden of establishing the existence of a substantial relationship, any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client confidences. *See INA Underwriters v. Nalibotsky*, 594 F.Supp, 1199, 1207 (E.D.Pa. 1984); *see also Buschmeier v. G & G Invs., Inc.*, 2007 WL 4150408, at *7 (E.D.Pa. Nov. 19, 2007).

To the extent that a motion to disqualify involves imputing an individual lawyer's representation to an entire firm, M.R.P.C. 1.10(a) is also relevant. Rule 1.10(a)(1) provides:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of

4

> materially limiting the representation of the client by the remaining lawyers in the firm.
>
> Rule 1.10(a)(2) applies in circumstances in which a firm is conflicted due to a prior representation undertaken by an attorney while the attorney was at a different law firm. Rule 1.10 "imputes one attorney's conflicts to all other attorneys in his firm." *United States v. McDade*, 404 Fed. Appx. 681, 683 (3d Cir. Dec. 22, 2010); *see also Exterior Sys. v. Noble Composites, Inc.*, 210 F.Supp.2d 1062, 1068 (N.D. Ind. 2002) ("Rule 1.10 addresses situations where a conflict of interest may be imputed to other lawyers associated in the same firm with the tainted lawyer.").
>
> Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances." *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F.Supp. 418, 428 (D. Del. 1986) (internal citations and quotation marks omitted). Indeed, "whether disqualification is appropriate depends on the facts of the case and is never automatic." *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F.Supp.2d 369, 374 n. 7 (D. Del. 2009). The required inquiry necessarily involves "a painstaking analysis of the facts." *Satellite Fin. Planning*, 652 F.Supp. at 1283 (internal quotation marks omitted); *see also Carlyle Towers Condo. Ass'n v. Crossland Sav.*, FSB, 944 F.Supp. 341, 345 (D.N.J. 1996) ("Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts."). Furthermore, the Court approaches motions to disqualify counsel with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27–28 (D.D.C. 1984).

*Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd*, 2011 WL 2692968, *4–*6 (D. Del. June 22, 2011).

The primary point of dispute is whether this patent infringement suit is the same as or "substantially related" to any of the work Mr. DiBernardo did for Walker Digital well more than a decade ago. As noted above, this involves three questions: (1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such

5

confidences be detrimental to the former client in the current litigation?

*1. Nature and Scope of Prior Representation.* Mr. DiBernardo's work was confined to junior prosecution work on patents unrelated to those in suit, either by specification or by subject matter. There is no evidence that Mr. DiBernardo was involved in any discussions of Walker Digital's strategies for patent prosecution, claim drafting, or licensing/litigation/monetization of their patents.

*2. Nature of the Present Lawsuit.* This is a patent lawsuit in the field of video surveillance. The main issues will likely be construction of the patents' claims, whether On-Net infringes the patents, whether the patents are invalid, and damages.

*3. Analysis.* Walker Digital did not disclose confidences specific to the patents in suit to Mr. DiBernardo. While Walker Digital may have disclosed more general confidences to other Morgan & Finnegan attorneys, such as general patent prosecution or claim drafting strategies, such confidences are not relevant to this action, which involves different patents and a different subject matter, and in which the patents' scope is to be drawn from intrinsic and extrinsic evidence, not Walker Digital's subjective intent or business strategy. It does not appear that Mr. DiBernardo was directly exposed to such general confidences. Even assuming that Mr. DiBernardo learned of such general confidences indirectly from more senior attorneys at Morgan & Finnegan, it is not apparent at all how confidential knowledge of Walker Digital's strategies and plans fifteen years ago could be relevant to any issue in the case, or harmful to Walker Digital in some other way. It therefore does not appear to me that there is any reasonable basis to disqualify Mr. DiBernardo from representing On-Net. It follows that Stroock & Stroock & Lavan as a firm is not implicated, and there is no reason for that firm to have screened Mr.

DiBernardo from the On-Net representation.

Thus, I do not believe that there is any evidence that Mr. DiBernardo's representation in this case is subtantially related to any of the work he previously did for Walker Digital. I will deny the motion to disqualify.

A separate order will be entered.